**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

APRIL CLIFTON,

Plaintiff,

v.

BOARD OF EDUCATION OF THE CITY OF CHICAGO and the VARGAS GROUP, INC.,

Defendants.

Case No. 23-CV-1680

Judge John Robert Blakey

**MEMORANDUM OPINION AND ORDER**

Plaintiff April Clifton sues Defendant Board of Education of The City of Chicago ("Board of Education" or "Board") and Defendant Vargas Group, Inc. ("Vargas"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). The Board of Education moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [12]. For the reasons explained below, this Court grants the Board's motion.

## I. The Complaint's Allegations[1]

The Board of Education contracts with Defendant Vargas Group, Inc. to provide custodial services for the Board's schools. [1] ¶ 13. Vargas, in turn, hired Plaintiff in July 2019 to work as a custodian. *Id.* ¶ 12. Plaintiff served as a "floater"

[1] The Court draws the facts from the allegations of the complaint, [1], which it takes as true for purposes of the motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

for one year, after which Vargas permanently assigned her to the Barbara Vick Early Childhood Center. *Id.* ¶¶ 13, 14. Plaintiff alleges that, during her employment, employees of both Vargas and the Board of Education supervised her. *Id.* ¶ 15. At all relevant times, Plaintiff satisfactorily performed her duties and received positive reviews, which the Board provided to Vargas. *Id.* ¶ 16.

In July of 2021, Eugene Phelon, a Board of Education employee, told a co-worker, in front of Plaintiff and referring to Plaintiff, that he was "gonna be hittin' that ass." *Id.* ¶ 17. That same day, Plaintiff reported the sexual harassment to Jasmine Ross, Phelon's supervisor; Ross told Plaintiff that she would "look into it." *Id.* ¶ 18.

On January 18, 2022, Phelon approached Plaintiff again, told her she needed a hug, and asked her who was going to "penetrate her." *Id.* ¶ 19. Plaintiff reported this new incident of harassment to Ross. *Id.* ¶¶ 21–22. Ross informed Plaintiff that the conduct would be investigated and told Phelon to stay away from Plaintiff. *Id.* ¶¶ 23–24.

Phelon seemed to follow Ross' instructions until July 2022, when he berated Plaintiff in front of co-workers. *Id.* ¶ 25. Plaintiff again reported Phelon's actions to Ross, who told Plaintiff she needed to take a smoke break. *Id.* Subsequently, on August 12, 2022, Phelon planted a razor blade in a room that the Plaintiff had just cleaned. *Id.* ¶ 26. Once more, Plaintiff reported Phelon to Ross, and, again, Ross took no action. *Id.* ¶ 27.

As a result, Plaintiff filed a complaint with the Chicago Public School Equal Opportunity Compliance Office (EOCO), reporting the sexual harassment, the razor planting incident, and Ross's inadequate response to Plaintiff's complaints. *Id.* ¶ 28. An EOCO investigator reached out to Amy O'Connor, the principal at Barbara Vick Early Childhood Center,[2] to investigate. *Id.* ¶ 29. O'Connor then contacted Plaintiff's immediate supervisor at Vargas, Darryl Smith, and told her that Plaintiff was "hostile." *Id.* In retaliation for her complaints, Vargas removed Plaintiff from her permanent assignment at Barbara Vick and reassigned her to Peace and Education Coalition Alternative Highschool. *Id.* ¶¶ 30, 36.

Following her transfer, in October of 2022, Plaintiff filed Equal Employment Opportunity Commission (EEOC) charges against Vargas and the Board. *Id.* ¶ 31. Plaintiff alleges that, shortly thereafter, in further retaliation, Vargas wrote her up baselessly on November 14, 2022, and December 29, 2022, *id.* ¶ 32, and a supervisor employed by Vargas began inspecting Plaintiff's work hourly rather than daily, *id.* ¶ 34. In February of 2023, a co-worker told Plaintiff that she had heard Defendants were trying to fire Plaintiff, *id.* ¶ 33, and by March of 2023, Vargas demoted Plaintiff back to a "floater." *Id.* ¶ 35. Plaintiff alleges that the Board and/or Vargas took these actions in retaliation for Plaintiffs' reporting of Phelon's acts of harassment. *See id.* ¶¶ 30, 36.

[2] The Barbara Vick Early Childhood Center is a public school within the Board of Education.

## II. Legal Standard

### A. Rule 12(b)(1) Standard

In evaluating a motion under Rule 12(b)(1), this Court must first determine whether the defendant raises a facial or factual challenge to subject matter jurisdiction. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Dig., Inc v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). Applicable here,[3] a facial challenge contends that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Silha*, 807 F.3d at 173 (emphasis in original).

In ruling on a facial challenge, this Court accepts as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996)).

Plaintiff bears the burden of proving that the Court has jurisdiction. *See Apex Digital,* 572 F.3d at 443; *see also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012) ("The party invoking federal jurisdiction bears the burden of demonstrating its existence.").

### B. Rule 12 (b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" demonstrating that relief can be granted, FRCP 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting

[3] Defendant argues that Plaintiff does not allege an injury that is traceable to the Board. *See* [12] at 4.

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.*

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court need not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III. Discussion

The Board of Education moves to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, and alternatively, under Rule 12(b)(6) for failure to state a claim. The Court first considers the Board's challenge to subject matter jurisdiction because dismissal under 12(b)(1) "makes all other challenges moot." *Althin CD Med., Inc. v. West Suburban Kidney Ctr., S.C.*, 874 F. Supp. 837, 839–40 (N.D. Ill. 1994); *see also* Fed. R. Civ. P. 12(b)(1).

### A. Article III Standing

Defendant argues that Plaintiff has failed to allege an injury-in-fact that is traceable to the Board of Education, and thus lacks standing. [12] at 4-5.

The standing requirement is rooted in Article III of the U.S. Constitution, which limits the subject matter jurisdiction of federal courts to "cases" and

"controversies." U.S. Const. Art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A plaintiff invoking federal jurisdiction must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (citing *Lujan*, 504 U.S. at 560–61). The burden of establishing standing rests with the party invoking federal jurisdiction and, at the pleading stage, that party must "clearly . . . allege facts demonstrating each element" to survive a motion to dismiss. *Spokeo,* 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Defendant only challenges the traceability element.[4] To plead this element, Plaintiff must allege facts showing a "causal connection between the injury" and the "conduct complained of." *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021) (citing *Lujan*, 504 U.S. at 560). Standing is "not always lost when the causal connection is weak," and does not require the Board's actions be the "very last step in the chain of causation." *Woodard*, 997 F.3d at 720 (citing *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018)). The injury, however, must be "fairly traceable to the challenged action(s) of the Board, and not the result of the independent action of some third party not before the court." *Woodard*, 997 F.3d at 978 (citing *Lujan*, 504 U.S. at 560–61) (cleaned up).

[4] Defendant contends that Plaintiff fails to adequately plead traceability because she has not alleged any "*direct* causal connection between the Plaintiff's alleged injuries and the alleged actions of the Board." [23] at 2. There is no such requirement. *See, e.g., J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021) (citing *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018)).

Here, Plaintiff alleges she was injured by, among other things, her transfer, demotion, and the failure to investigate her complaints of sexual harassment. *Id.* ¶ 36. Plaintiff alleges that, after learning that she filed a complaint with the EOCO, a Board employee, O'Connor, told Plaintiff's immediate supervisor at Vargas that Plaintiff was "hostile," *id.* ¶ 29, which resulted in her being transferred out of her permanent placement, *id.* ¶ 30. Additionally, Plaintiff alleges that, in retaliation for her complaints to the EOCO and EEOC about how the Board, namely Ross, handled her internal complaints, the Board deliberately persisted in its failure to investigate. *See id.* ¶ 36. And after she lodged those complaints, Plaintiff learned that Defendants—Vargas and the Board—were attempting to get her fired. *See id.* ¶ 33. These actions, traceable to the Board, are sufficient to satisfy the traceability requirement. Accordingly, Plaintiff has adequately pleaded Article III standing to bring this claim against the Board. The Court thus denies the Board's motion to dismiss for lack of subject matter jurisdiction.

**B. Rule 12(b)(6)**

Defendant next argues that Plaintiff has failed to state a claim under Title VII because Plaintiff is not an employee of the Board of Education. [23] at 3. Plaintiff concedes that the Board was not Plaintiff's "formal employer," but responds that the Board may be liable under Title VII either as a joint employer or for interfering with Plaintiff's employment. [17] at 3. The Court addresses each theory in turn.

### 1. Plaintiff has not plausibly alleged that the Board of Education is her Joint Employer

Title VII "prohibits *employers* from discriminating against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948, 959 (7th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a) (emphasis added)). Thus, to maintain a Title VII action, a plaintiff is required to demonstrate the "existence of an employment relationship." *Logan v. City of Chicago*, 4 F.4th 529, 538 (7th Cir. 2021); *see also Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) (observing that the "specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable as that is, but the eradication of discrimination *by employers against employees*") (emphasis in original).

Plaintiff concedes that Vargas directly employed her but argues that she plausibly alleges that the Board jointly employed her. *See* [17] at 3–4.[5] For purposes of Title VII, an employee can have more than one employer: an entity "can be an indirect employer or a joint employer or have some other complex combined relationship with an employee." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 905 (7th Cir. 2018).

[5] Plaintiff makes this argument for the first time in her Response. The complaint, however, does not allege that Plaintiff was jointly employed by the Board. *See* [17] at 3–4.

To determine whether an entity is a joint employer for Title VII purposes, the Seventh Circuit instructs courts to apply the factors articulated in *Knight v. United Farm Bureau Mut. Ins. Co.*:

> (1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment.

*Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015) (citing *Knight v. United Farm Bureau,* 950 F.2d 377, 378–79 (7th Cir. 1991)).

Of the *Knight* factors, "the employer's right to control is the most important, and a court must give it the most weight." *Frey v. Hotel Coleman*, 903 F.3d 671, 676 (7th Cir. 2018). The right to control depends significantly upon the ability to hire and fire. *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 449 (7th Cir. 2023) (citing *E.E.O.C. v. Illinois*, 69 F.3d 167, 171 (7th Cir. 1995)); *see also Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 361 (7th Cir. 2016).

At the pleading stage, a plaintiff must allege "sufficient facts to support a theory that the defendant exercised enough control over her to qualify as a joint employer." *See Claussen v. Muchowski*, No. 12-cv-05316, 2022 WL 4465931, at *4 (N.D. Ill. Sep. 26, 2022) (citing *Nor v. Alrashid*, 2022 WL 815542, at *6 (N.D. Ill. Mar. 17, 2022)).

For example, in *Claussen*, the plaintiff worked as an Office Manager in the office of Thomas Muchowski, an insurance agent with Farmers Group, Inc. *Claussen*, 2022 WL 4465931, at *1. When Muchowski allegedly sexually harassed her, Plaintiff sued both Muchowski and Farmers under Title VII. *Id.* In moving to dismiss,

Farmers argued that the plaintiff failed to plausibly allege that Farmers was her joint employer where she did not allege that Farmers hired or could fire her, paid her, gave her bonuses, dictated her assignments, or controlled her work performance, or evaluations. *Id.* at *2–4.

In response, the plaintiff pointed to her allegations that she contacted Farmers to complain about the harassment she received by Muchowski and a Farmers attorney contacted her in response; she argued this demonstrated that "Farmers had 'some level of interest and control' over her 'work environment.'" *Id.* at *4. This Court remained unpersuaded and dismissed the complaint, finding that these allegations suggested "at most that Farmers had some control over *Muchowski*" or "administrative issues," but did "not establish that Farmers had substantial control over her." *Id.* at *4–5.

Similarly, in *Budzyn v. KFC Corp.*, No. 21 C 4152, 2022 WL 952746, at *2 (N.D. Ill. Mar. 30, 2022), the court held that the plaintiff did not sufficiently allege that KFC Corporation was her joint employer where she did not allege that it had the ability to hire, fire, or direct her work as a server and dishwasher, and alleged only that KFC Corporation employed, managed, and supervised her work, but failed to allege any facts as to how the company did so. The court also noted that the plaintiff failed to allege any facts bearing on the *Knight* factors, such as the length of the job commitment. *Id.* at *3. *Compare Claussen,* 2022 WL 4465931, at *4, *and Budzyn*, 2022 WL 952746, at *2, *with Kim v. Stonex Grp., Inc.*, No. 22-cv-02392, 2022 WL 17082574, at *3 (N.D. Ill. Nov. 18, 2022) (plaintiff sufficiently alleged defendant was

joint employer where defendant had the power to fire him and did so, defendant employed plaintiff's supervisors, and defendant issued him paychecks), *and Thomas Coach Outlet Store*, No. 16-cv-3950, 2017 WL 386656, at *3 (N.D. Ill. Jan. 27, 2017) (plaintiff sufficiently alleged defendant was joint employer where defendant had power over the termination of her employment assignment).

Here, as in *Claussen*, Plaintiff claims the Board was her joint employer because a Board employee, Ross, received her complaints of sexual harassment about Phelon, one of her employees. [17] at 4. As in *Claussen*, however, this indicates that the Board had control over Phelon, not Plaintiff. *See Claussen*, at *4–5. Further, as in *Budzyn*, Plaintiff claims that the Board "supervised" her, but she fails to allege any facts as to how the Board did so; indeed, she alleges that Vargas' supervisors inspected her work. *See* [1] ¶ 34. And Plaintiff's allegation that O'Connor, a Board employee, phoned Vargas to report her "hostile" nature, like the fact that all Plaintiff's performance reviews were sent to Vargas, further indicates that it was Vargas who controlled Plaintiff, not the Board. *See id.* ¶¶ 29, 16. Such assertions do not plausibly allege that the Board had control over the plaintiff's employment.

Making all reasonable inferences in Plaintiff's favor, this Court cannot find that the complaint plausibly alleges that the Board of Education was her joint employer. The complaint does not even allege—anywhere—that Plaintiff was employed by the Board of Education, let alone provide facts plausibly suggesting so. On the contrary, the complaint reveals that any time that control needed to be exercised, Vargas, not the Board, did so: Vargas hired Plaintiff, [1] ¶ 12; Vargas wrote

up Plaintiff, *id.* ¶ 32; Vargas' supervisors inspected Plaintiff's work, *id.* ¶ 34; and Vargas demoted Plaintiff to serving as a "floater," *id.* ¶ 36. *See also McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir. 2000) (noting "a plaintiff may plead herself out of court by pleading facts that undermine the allegations set forth in her complaint"). Because Plaintiff has not plausibly alleged "facts to support a theory that the defendant exercised enough control over her to qualify as a joint employer," *see Claussen*, 2022 WL 4465931, at *6, her Title VII claim against the Board fails.

**2. Even if recognized, interference theory would not apply to Plaintiff's claims**

In her Response, Plaintiff seeks to salvage her Title VII claim by asserting an "interference theory" of employment discrimination,[6] under which a plaintiff may sue an entity that is not her direct employer for interfering with her employment opportunities or relationships with another employer. [17] at 3; *see Douglas v. Univ. of Chi.*, 619 Fed. App'x 556, 557 (7th Cir. 2015). Plaintiff contends that the Board interfered with her employment with Vargas by "signaling to her direct employer that she was 'hostile.'" [17] at 4. This theory fails.

As a preliminary matter, the Board is correct that the complaint contains no such theory of liability under Title VII, and Plaintiff cannot amend her complaint to assert a new theory of liability through her response brief, *see Pirelli Armstrong Tire*

---

[6] Circuits are divided on the viability of this theory. *Compare Christopher v. Stouder Memorial Hospital,* 936 F.2d 870, 875 (6th Cir. 1991), *Zaklama v. Mt. Sinai Medical Center,* 842 F.2d 291, 295 (11th Cir. 1988), *Gomez v. Alexian Brothers Hospital of San Jose,* 698 F.2d 1019, 1021 (9th Cir. 1983), and *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C. Cir. 1973) (recognizing interference theory), *with Lopez v. Massachusetts,* 588 F.3d 69, 89 (1st Cir. 2009), *and Gulino v. New York State Education Dep't,* 460 F.3d 361, 374–76 (2d Cir. 2006) (rejecting interference theory).

*Corp. Retiree Med. Benefits Trust v. Walgreens*, 630 F.3d 436, 448 (7th Cir. 2011). The Court can (and does) dismiss the complaint on this basis, but Plaintiff's interference theory fails for another reason as well.

The Seventh Circuit has yet to expressly accept or reject the interference theory in Title VII[7] claims against a third party. *See Douglas*, 619 Fed. App'x at 557 (noting that the Seventh Circuit has not taken a definitive position on interference theory); *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 493 n.2 (7th Cir. 1996) (same). In *EEOC v. Illinois,* however, the court "strongly suggested in dicta an unwillingness to recognize such a theory." *Nor*, 2022 WL 815542, at *7 (citing *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995) ("We think it very doubtful that laws which forbid employers to discriminate create a blanket liability to employees of other employers for interference with *their* employment relationship.")) (internal citations omitted).

District courts since have interpreted *EEOC v. Illinois* to preclude Title VII claims based upon an interference theory. *See Nor,* 2022 WL 815542, at *7 (citing *Kerr v. WGN Con't Broad, Co.*, 229 F.Supp.2d 880, 887 (N.D. Ill. 2002)) (concluding that an interference theory is unavailable in a Title VII action because "for a plaintiff

---

[7] In support of an interference theory of Title VII, Plaintiff directs the Court to *Sklyarsky v. Means-Knaus Partners, L.P.,* 777 F.3d 892, 896 (7th Cir. 2015). In *Sklyarsky*, the Seventh Circuit recognized the validity of an interference theory under 42 U.S.C. § 1981, but not for Title VII claims. The Complaint does not mention a Section 1981 claim and neither party mentioned such a claim in briefing. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 669 (7th Cir. 2013) (finding Section 1981 claim waived where no reference to Section 1981 was made in the complaint, amended complaint, or either of two responses to motions to dismiss); *see also Douglas v. Univ. of Chi.,* 2015 WL 738693, at *2, n.4 (N.D. Ill. Feb. 19, 2015). Rather, the Complaint only alleges an interference theory of discrimination under Title VII, which fails. *See* [17] at 3.

whose employment is interfered with by a third party, the remedy is against the direct employer for the discrimination, not the third party"); *Mays v. BNSF Ry. Co.*, 974 F.Supp.2d 116, 1173–74 (N.D. Ill. 2013) (finding it "doubtful" that any interference theory would be available to plaintiff); *Abbott v. Vill. of Westmont*, No. 02 C 2296, 2003 WL 22071492, at *7 n.4 (N.D. Ill. Sept. 5, 2003) ("The Seventh Circuit has strongly implied, but not yet decided, that [interference] theory would not be allowed under federal antidiscrimination laws.").

Moreover, even if an interference theory claim remained available, Plaintiff fails to state a claim under even its most expansive interpretations. For example, those courts that accept interference theory apply it only when "the defendant so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the plaintiff, as where a hospital prevents a nurse from being employed by a hospitalized patient." *See Douglas*, 619 Fed. App'x at 557. Thus, in *Douglas*, the plaintiff, a non-employee of the University of Chicago, sued the university under Title VII for race discrimination alleging that it interfered with his prospective employment opportunities. *Id.* The court affirmed the dismissal of his claim because the plaintiff had "not plausibly alleged that the university journal's decisions about which articles to publish controlled any of his potential employment relationships to such an extent as to trigger the theory's application." *Id.*

Here, the complaint does not plausibly allege the requisite control for interference theory to apply, for the same reasons that it fails to plausibly allege that

the Board was Plaintiff's joint employer. As explained above, taken as true, the complaint's allegations make clear that Vargas was the acting party when control needed to be exercised, not the Board. Accordingly, even if legally available, Plaintiff has failed to state a Title VII claim under an interference theory of liability.

In sum, because Plaintiff has failed to sufficiently allege either that the Board was her joint employer or that the Board could be held liable under an interference theory, Plaintiff has failed to state a claim against the Board under Title VII. As such, this Court grants the Board's motion to dismiss under Rule 12(b)(6).

**C. Request to Strike Request for Punitive Damages**

Finally, the Board asks the Court to strike Plaintiff's improper request for punitive damages. [12] at 6. Plaintiff concedes that this request was improper, [17] at 5. For present purposes, the issue is moot.

## IV. Conclusion

For the reasons stated above, the Court grants Defendant Board of Education's motion to dismiss [12] without prejudice. Plaintiff may amend her complaint if she can, in good faith and consistent with Rule 11, set forth factual allegations sufficient to state a claim consistent with this Court's ruling and relevant law. Plaintiff shall file an amended complaint by April 15, 2024. If Plaintiff fails to file an amended complaint by this date, this case will be dismissed.

Dated: March 25, 2024

Entered:

John Robert Blakey
United States District Judge